UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC. | CIVIL ACTION |
| VERSUS | NO.: 12-273-BAJ |
| SOUTHWEST MISSISSIPPI ANESTHESIA, P.A., INC. D/B/A PAIN TREATMENT CENTER OF BATON ROUGE | |

## ORDER

This contract dispute is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) filed by plaintiff Hitachi Medical Systems America, Inc. (Hitachi) (Doc. 11). Plaintiff seeks to dismiss Counts III and IV of the counterclaim filed against it by defendant Southwest Mississippi Anesthesia, P.A., Inc. d/b/a Pain Treatment Center of Baton Rouge (SWMA) based on a forum selection clause in one of the two contracts between the parties. Plaintiff's motion to dismiss is opposed (Doc. 12). This Court has jurisdiction over this matter based on diversity jurisdiction, 28 U.S.C. §1332.

**Factual Background**

Plaintiff Hitachi is in the business of selling and servicing medical diagnostic imaging products and medical equipment, such as MRI machines (Docs. 5 and 7). Although the date is not clear, it is undisputed that at some point prior to 2007, plaintiff installed an Echelon 1.5T High Field MRI System (Echelon) and an Airis Elite Open MRI at defendant's facility (Docs. 1, 5, 7). On or about April 2007, defendant SWMA entered into a Service Maintenance Agreement with plaintiff Hitachi for inspection, service, and maintenance of

the Echelon (Doc. 1, Exhibit A). On or about October 2009, defendant SWMA entered into a Purchase Agreement for an upgrade to the Airis Elite Open MRI - the Airis Elite Open Permanent Magnet Upgrade - and, at the same time, entered into a Service Maintenance Agreement for inspection, service, and maintenance of the Airis Upgrade (Docs. 1 and 5).

The business relationship between the parties deteriorated and sometime in August 2011, plaintiff Hitachi stopped servicing the Echelon and Airis, and defendant SWMA stopped paying the amounts owed under the Service Maintenance Agreements (SMAs). Plaintiff Hitachi brought suit against defendant SWMA to collect the amounts owed under the SMAs, attorney's fees, and interest (Doc. 1). Defendant SWMA filed a counterclaim against plaintiff Hitachi alleging that Hitachi failed to perform and breached the SMAs in connection with both the Echelon and the Airis (Count I and Count II); that SWMA relied to its detriment on the guarantees and information provided by Hitachi's representatives regarding the image quality of the scans and the coverage for the procedures performed in purchasing the Airis upgrade (Count III); and that Hitachi negligently installed the upgrade and negligently investigated and diagnosed the source of the image quality issue in servicing the Airis (Count IV) (Doc. 5).

Both the Airis Upgrade Purchase Agreement and the Service Maintenance Agreements contain clauses governing where suit should be brought and which law governs. The forum selection clause in the Airis Upgrade Purchase Agreement provides as follows:

15. Construction; Jurisdiction. Any suit directly or indirectly involving this Agreement, including but not limited to the actions of Hitachi's employees, representatives or agents, whether arising before, during or after the term of this Agreement, must be filed solely in a federal or state court located in Ohio. This is a mandatory forum selection clause. Jurisdiction over claims arising, directly or indirectly, from the matters covered by this Agreement is proper exclusively in Ohio courts. Venue is proper only in courts located in Cleveland, Ohio. The parties to this Agreement consent to Ohio courts exercising: (a) personal jurisdiction over the parties; and (b) subject matter jurisdiction over any dispute arising from this Agreement. All parties further consent to venue exclusive in Cleveland, Ohio, even if one or more parties to the Agreement have no contact with the selected forum in Cleveland, Ohio. Consent to Ohio courts having sole jurisdiction and venue over disputes involving Hitachi is a material inducement for Hitachi to enter into this Agreement and, without this consent, Hitachi would not enter into this Agreement because Hitachi's contact with forums outside Ohio is more limited and less convenient than Hitachi's contact with Ohio. By entering into this Agreement, the parties acknowledge that they are conducting business in the State of Ohio. Ohio law shall control, govern, and apply for all disputes arising from this Agreement, which shall be construed in accordance with the laws of the State of Ohio. Headings used throughout this Agreement are used for the convenient reference of the parties and are not intended to limit or modify the express terms of the Agreement. Each party hereby appoints each officer of Hitachi as its agent for accepting any process in Ohio.

(Doc. 11-2, Exhibit A, p. 18).

The clause in the Service Maintenance Agreements provides as follows:

10.   CONSTRUCTION; JURISDICTION
       This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio. Headings used herein are for the convenient reference to the parties and are not intended to modify the express terms hereof. Each party consents to the jurisdiction of the federal and state courts located in Ohio, and hereby appoints each officer of Hitachi as its agent for accepting any process in Ohio.

(Doc. 11-2, Exhibit B, p. 22).

The parties executed an amendment to the SMAs which amends Paragraph 10 of the SMAs as follows:

> 4. The word "Ohio" shall be deleted and the word "Louisiana" shall be substituted in its place wherever the word "Ohio" appears in Section 10 (Construction; Jurisdiction ) of MRI SERVICE AGREEMENT TERMS AND CONDITIONS for each of the SMAs.

Id., p. 23.

Hitachi moves the Court for an order dismissing Count III and Count IV of SWMA's counterclaim arguing that Count III and Count IV contain claims arising under the Purchase Agreement; therefore, those claims must be brought in Ohio pursuant to the mandatory forum selection clause. The motion to dismiss is now before the Court.

**Discussion**

Hitachi contends that it brought suit against SWMA for breach of the SMAs in Louisiana pursuant to what it deems to be a "forum selection clause" in the SMAs.[1] Hitachi argues, however, that SWMA's claims alleged in Count III and Count IV of its counterclaim should be dismissed because those claims do not involve the SMAs, but rather, involve the Purchase Agreement, which contains a mandatory forum selection clause requiring all claims to be brought in Ohio. SWMA argues that its claims in Count III and Count IV do not involve the Purchase Agreement and, therefore, are properly brought as counterclaims in Louisiana. Alternatively, SWMA requests that its claims be transferred pursuant to 28 U.S.C. §1404 as opposed to dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

This Court applies federal law to determine the enforceability and applicability of the

---

[1] Unlike the "Construction; Jurisdiction" clause in the Purchase Agreement, the "Construction; Jurisdiction" clause in the SMAs does not require that suits involving the SMAs be brought in Louisiana. It does, however, state that the SMAs will be governed by the laws of the State of Louisiana (Doc. 11-2, Exhibit B).

-4-

forum selection clauses at issue. See *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397 (5th Cir. 2008); *Haynsworth v. The Corporation*, 121 F. 3d 956, 962 (5th Cir. 1997). Under federal law, forum selection clauses are presumed enforceable. Id. The presumption of enforceability may be overcome, however, by a clear showing that the clause is " 'unreasonable' under the circumstances." Id., at 963, citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth v. The Corporation*, 121 F. 3d at 962, citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 at 595, 111 S.Ct. 1522 at 1528, 113 L.Ed.2d 622 (1991); *The Bremen,* 407 U.S. at 12-13, 15, 18, 92 S.Ct. at 1914-15, 1916, 1917. The party resisting enforcement on these grounds bears a "heavy burden of proof." Id, citing *The Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917.

SWMA does not argue that the forum selection clause in the Purchase Agreement should fail because of fraud or overreaching. SWMA argues that its claims in Count III and Count IV do not involve the Purchase Agreement and, therefore, are not governed by the forum selection clause in the Purchase Agreement.

The forum selection clause in the Purchase Agreement specifically states that it is

a "mandatory forum selection clause" and applies to "[a]ny suit directly or indirectly involving [the Purchase Agreement]." (Doc. 11-2, Exhibit A). Thus, the Court must consider whether SWMA's claims asserted in Count III and Count IV are subject to the forum selection clause in the Purchase Agreement. In doing so, the Court will look at the language of the clause, the subject matter of the claim, and the contractual relationship defined by the contract in light of the language of the clause. See *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221-23 (5th Cir. 1998); *Smith v. Lucent Tech, Inc.*, 2004 WL 515769, at *9 (E.D. La. 2004).

SWMA alleges as follows in Count III of the counterclaim:

### COUNT III
. . .

25. On or about October 2009, SWMA agreed to upgrade the Airis MRI, after being coerced by a representative of Hitachi. The upgrade costs two hundred and seventy-five thousand dollars ($275,000).

26. The Hitachi representative guaranteed that the upgrade would result in scans with better image quality. SWMA relied on the assertions of the Hitachi representative and purchased the upgrade.

27. Following the upgrade, the quality of the scans did not increase. Hitachi sent numerous service technicians to troubleshoot and repair the issue. However, the technicians were never able to pinpoint the problem, until Hitachi finally sent a service person who specialized in open MRI machines, who was able to ascertain that the machine was out of "shim."

28. SWMA erroneously relied on the aforementioned representations to its detriment and/or that defendants and/or their agents negligently/fraudulently provided the wrong information, and/or were grossly negligent in failing to provide the correct information regarding coverage for the procedures performed upon which SWMA reasonably relied to its detriment in purchasing the upgrade.

29. As a direct and proximate result, SWMA has been damaged in an amount to be specifically proven at trial.

(Doc. 5).

Hitachi moves to dismiss Count III arguing that it contains allegations involving the Purchase Agreement, which are subject to the forum selection clause in the Purchase Agreement mandating an Ohio forum (Doc. 11). SWMA responds by arguing that claims asserted in Count III arise out of negligence and tort law and do not require the Court's interpretation of the clauses in the Purchase Agreement (Doc. 12).

Defendant SWMA alleges in Count III that it relied to its detriment on guarantees made by Hitachi's representatives regarding the image quality of the scans produced and the coverage for procedures provided by the MRI machine in making its decision to purchase the Airis Upgrade. Defendant alleges that Hitachi's representatives negligently/fraudulently and/or were grossly negligent in failing to provide the correct information in connection with the sale of the Airis Upgrade. Defendant's allegations asserted in Count III directly or indirectly involve the sale/purchase of the Airis Upgrade and, therefore, arise out of matters covered by the Purchase Agreement. Whether SWMA's claims are in contract or in tort is not dispositive of whether the claims arise out of the Purchase Agreement for purposes of determining whether the forum selection clause is applicable. See *Marinechance*, 143 F.3d at 221-23; see also *Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc*, 2010 WL 3199949 (M.D. La. 2010). Thus, defendant's claims asserted in Count III are subject to the forum selection clause in the Purchase Agreement, which mandates that all claims be brought in federal or state court in Ohio. Hitachi's motion to dismiss is granted with respect to Count III of SWMA's counterclaim.

The Fifth Circuit has treated a motion to dismiss based on a forum selection clause

as proper under Fed. R. Civ. P. 12(b)(3). See *Lim v. Offshore Specialty Fabricators, inc.*, 404 F.3d 898, 902 (5th Cir. 2005); see also *Ginter v. Belcher, Prendergast & Laporte*, 536 F. 3d 439 (5th Cir. 2008). The Court finds that dismissal pursuant to Fed. R. Civ. P. 12(b)(3) is appropriate in this case because the claims at issue are counterclaims that cannot easily be transferred to another court.

SWMA alleges in Count IV of the counterclaim:

### COUNT IV
. . .

31. On or about October 2009, SWMA attempted to upgrade the Airis with the Airis Elite Open Permanent Magnet Upgrade. Despite representation that the image quality would improve, SWMA continued to experience problems with scans.

32. It was later discovered, by a Hitachi service person who specialized in open MRI machines, that the machine was out of "shim."

33. It is SWMA's contention that Hitachi negligently installed the upgrade.

34. Further, SWMA contends that Hitatchi was negligent in investigating and diagnosing the source of the image quality issue.

35. As a direct and proximate result, SWMA has been damaged in an amount to be specifically proven at trial.

(Doc. 5).

Hitachi moves to dismiss Count IV arguing that it contains allegations concerning the "installation" of the Airis Upgrade, which are governed by the Purchase Agreement (Doc. 11-1). SWMA argues that its claims alleged in Count IV are governed by the SMA, which is the basis of Hitachi's suit against SWMA (Doc. 12).

Defendant SWMA alleges in Count IV that Hitachi negligently installed the Airis Upgrade and negligently investigated and diagnosed the source of the image quality issue,

resulting in problems with the image quality of the scans (Doc. 5). Hitachi correctly notes that the Purchase Agreement contain terms and conditions relating to the "installation" of the Airis Upgrade (Doc. 11-2, Exhibit A). The allegations in Count IV, however, do not relate solely to the "installation" of the Airis Upgrade. Based on the allegations in Count IV, it is clear that SWMA experienced problems with the image quality of the scans beginning at the point of installation and continuing after repeated efforts to investigate, diagnose, and service the MRI machine. The allegations indicate that the problem was ultimately diagnosed by a service person who "specialized in open MRI machines." The issues of whether SWMA's alleged problem with the image quality of the scans and resulting damages were caused by faulty installation or poor service after installation are inextricably intertwined and must be considered together to determine the amounts owed under the Service Agreements (if any), which is the issue in Hitachi's main demand. Thus, Hitachi's motion to dismiss Count IV of SWMA's counterclaim is denied.

Accordingly,

**IT IS ORDERED** that the motion to dismiss filed by Hitachi Medical Systems America, Inc. (Doc. 11) is **GRANTED IN PART AND DENIED IN PART** in that **COUNT III** of the Counterclaim filed by Southwest Mississippi Anesthesia P.A., Inc. d/b/a Pain Treatment Center of Baton Rouge is **DISMISSED, WITHOUT PREJUDICE.**

Baton Rouge, Louisiana this <u>18th</u> day of January, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**